UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARITZA N. MARTINEZ,

             Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00369 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Maritza N. Martinez ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 14; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, Plaintiff's motion (Dkt. 14) is granted, the Commissioner's motion (Dkt. 16) is denied, and the case is remanded for calculation and payment of benefits.

**BACKGROUND**

Plaintiff protectively filed her application for SSI on April 26, 2013. (Dkt. 7 at 15, 75).[1] In her application, Plaintiff alleged disability beginning March 6, 2013, due to cirrhosis of the liver. (*Id.* at 15, 76). Plaintiff's application was initially denied on August 28, 2013. (*Id.* at 15, 110-14). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Donald McDougall in Buffalo, New York, on June 8, 2015. (*Id.* at 15, 44-74). On November 25, 2015, ALJ Michael W. Devlin issued an unfavorable decision. (*Id.* at 85-98). Plaintiff requested Appeals Council review, and on May 16, 2017, the Appeals Council vacated the unfavorable decision and remanded the case for further administrative proceedings. (*Id.* at 15, 104-08).

A second administrative hearing was held before ALJ Devlin on December 1, 2017, in Buffalo, New York. (Dkt. 12 at 3-22). On April 16, 2018, the ALJ issued an unfavorable decision. (Dkt. 7 at 12-31). Plaintiff requested Appeals Council review; her request was denied on January 25, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-8). This action followed.

**LEGAL STANDARD**

I.  **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work

activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since April 26, 2013, the SSI application filing date. (Dkt. 7 at 17).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "bilateral hip osteoarthritis, status post August 2015 left hip replacement and June 2016 right hip replacement; status post bilateral January-February 2017 thumb surgeries; bilateral carpal tunnel syndrome; degenerative disc disease of the lumbar spine; cirrhosis of the liver and ascites; esophageal varicose veins; diabetes mellitus with diabetic neuropathy; asthma; major depressive disorder; and anxiety disorder." (*Id.* at 18). The ALJ further found that the following medically determinable impairments were non-severe: degenerative changes in the hands; mild right elbow osteoarthritic changes; right knee pain; mild left knee osteoarthritis; foot pain; bilateral greater trochanteric bursitis; myofascial pain syndrome; bilateral leg cramps; hyperglycemia; headaches; dizziness; mild obesity; hypertension; edema; anemia; dysesthesia; dysphagia; gastroesophageal reflux disease ("GERD"); history of hernia repair; splenomegaly; alcoholic hepatitis; cholelithiasis; cholecystitis; gallstones; abdominal pain; ovarian cysts; urinary tract infections; constipation; cellulitis; dermatitis; sinusitis; dyspnea; chronic obstructive pulmonary disease ("COPD"); tobacco use disorder; smoking cessation; cannabis abuse in

remission; alcohol dependence in remission; chest pain; sleep disturbance; insomnia; fatigue; vitamin deficiencies; and low platelet counts. (*Id*. at 18).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 19). The ALJ particularly considered the criteria of Listings 1.02A, 1.02B, 1.04, 3.02, 3.03, 9.00, 11.14, 12.04, and 12.06 in reaching his conclusion. (*Id.* at 19-22).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a):

> because she is able to occasionally lift and/or carry less than ten pounds, frequently lift and/or carry no appreciable weight, stand and/or walk up to two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Although the claimant is unable to climb ladders/ropes/scaffolds, she is able to occasionally push and/or pull less than ten pounds, and she is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and/or stairs. [Plaintiff] is able to frequently handle and finger bilaterally, and she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. In addition, the claimant is able to understand, remember, and carry out simple instructions and tasks, and she is occasionally able to interact with co-workers and supervisors. [Plaintiff] is limited to little or no contact with the general public, and she is able to work in a low-stress environment (*i.e.*, no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes). [Plaintiff] is able to consistently maintain concentration and focus for up to two hours at a time.

(*Id.* at 22). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of electronic inspector, laboratory

inspector, and final assembler. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

## II. Reversal and Remand of This Matter for Calculation and Payment of Benefits is Appropriate

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ failed to reconcile the vocational expert's testimony with the Dictionary of Occupational Titles; (2) the ALJ relied on his own lay opinion, rather than on medical opinion evidence; and (3) the ALJ failed to reconcile the treating physician opinion with the RFC. (Dkt. 14-1 at 1). For the reasons set forth below, the Court agrees with Plaintiff, and finds that the ALJ erred in evaluating the opinion evidence offered by Plaintiff's treating hand surgeon, Joshua Jones, M.D. The Court further finds that, under the applicable regulations, the ALJ should have given controlling weight to the opinion of Dr. Jones and that had he done so, a finding that Plaintiff was disabled necessarily would have followed. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

### A. The Treating Physician Rule

Plaintiff contends that the ALJ improperly weighed opinion evidence offered by Dr. Jones. (Dkt. 14-1 at 28). Specifically, Plaintiff argues that while the ALJ assigned "significant weight" to Dr. Jones's opinion relating to Plaintiff's manipulative limitations, he failed to include those limitations in the RFC and failed to explain his reasoning for not including them. (*Id.* at 28-30).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to

"controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*. "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id*. (quotations omitted).

An ALJ must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those

good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Plaintiff began treating with Dr. Jones in March 2014, for left thumb pain and locking. (Dkt. 7 at 708). On April 2, 2014, Plaintiff underwent left trigger thumb release surgery, performed by Dr. Jones. (*Id.* at 528). While Plaintiff initially reported an improvement in symptoms (*id.* at 711-12), in July 2014, she had bilateral hand pain, with her right hand worse than her left hand. (*Id.* at 716). On August 27, 2014, Plaintiff underwent a right endoscopic carpal tunnel release on her right hand, which was also performed by Dr. Jones. (*Id.* at 720). Thereafter, on September 18, 2014, Dr. Jones performed a left endoscopic carpal tunnel release. (*Id.* at 722). At a follow-up appointment in October 2014, Plaintiff reported that she was doing well, and denied numbness, tingling, and locking. (*Id.* at 724). In April 2015, Plaintiff visited Dr. Jones and reported pain at the base of her right thumb, which had worsened over the past month. (*Id.* at 727). Plaintiff received a corticosteroid injection for her pain. (*Id.* at 728, 731). However, on June 10, 2015, Plaintiff ultimately underwent a right trigger thumb release, which was performed by Dr. Jones. (*Id.* at 734). After the surgery, Plaintiff reported that she was doing well and that tingling in her thumb was improving. (*Id.* at 736).

On July 23, 2015, Dr. Jones completed a "Manipulative Limitations Medical Source Statement." (*Id.* at 751). Dr. Jones noted that Plaintiff experienced limitation of motion and tingling. (*Id.*). He opined that Plaintiff did not have any weight-lifting limitations with her left arm but should not lift with her right arm. (*Id.* at 752). Plaintiff could not grasp,

turn, or twist objects with her right hand, could not use the fingers on her right hand for fine manipulations, and could not use her right arm to reach in front or overhead. (*Id*.).

In December 2015, Plaintiff visited Dr. Jones's office, complaining of expanding right elbow pain and left thumb pain. (*Id*. at 802). Frank Domnisch, PA-C, instructed Plaintiff to avoid any direct pressure leaning on the right elbow and provided Plaintiff with a short opponens brace to utilize as needed to address her left thumb pain. (*Id*. at 804). Plaintiff again reported left thumb pain in February 2016 (*id*. at 799) but reported improvement in pain in April 2016 (*id*. at 795). However, Plaintiff's pain returned in May 2016, and she indicated that she wanted to proceed with surgery. (*Id*. at 792-93). At a visit on December 16, 2016, Plaintiff continued to complain of left thumb pain (*id*. at 788), and she was also assessed with early right thumb CMC joint osteoarthritis. (*Id*. at 789). Plaintiff was scheduled for two surgeries, including a right accessory APL tenotomy and a left thumb CMC joint arthrotomy with volar beak ligament reconstruction using FCR autograft, left thumb UCL reconstruction. (*Id*.). On January 12, 2017, Plaintiff underwent a right accessory abductor pollicis longus tenotomy, which was performed by Dr. Jones. (*Id*. at 786). Shortly thereafter, on February 2, 2017, Plaintiff underwent the following procedures, which were also performed by Dr. Jones: left thumb carpometacarpal arthrotomy with debridement; left thumb volar break ligament reconstruction using a flexor carpi radialis tendon transfer; and left thumb ulnar collateral ligament repair of chronic ulnar collateral ligament tear using local tissues. (*Id*. at 783).

Plaintiff attended a follow-up appointment on February 14, 2017. (*Id*. at 779). She reported that she was doing well but had some numbness in her left thumb. (*Id*.). On

March 14, 2017, Plaintiff reported a sharp, shooting pain in the left thumb and wrist, numbness on the dorsum of the thumb, and pain in her right thumb at the first dorsal compartment. (*Id*. at 775). An objective examination on that date revealed the following:

> Left Hand: Well-healed incision over the thumb, volar wrist, there is hypersensitivity around the thumb incisions and diminished sensation over the dorsal thumb. There is significant stiffness to the thumb at the MP and IP and CMC joints. She does have some stiffness of the wrist. On the right side she does have some tenderness over the first dorsal compartment incision. She does have some slight pain around the CMC joint but this is not as bad as preoperatively.

(*Id*. at 776). Dr. Jones recommended that Plaintiff "participate in occupational hand therapy to begin working on range of motion and desensitization." (*Id*.).

The ALJ found that the opinions offered by Dr. Jones and PA Domnisch were entitled to "significant, but not great, weight," due to their expertise, their treating relationship with Plaintiff, and the relative consistency of their opinions with each other and the medical evidence. (*Id*. at 27). However, the ALJ noted that these opinions "were issued shortly after various surgeries on [Plaintiff's] upper extremities, and none of their opinions contain any durational assessments indicating that the very significant limitations assigned were expected to last for a continuous period of at least twelve months," and that "the record shows that the claimant responded well to each surgery within twelve

months[.]" (*Id*. at 27-28). The ALJ also found that PA Domnisch's statements regarding Plaintiff's limitations were vague.[2] (*Id*. at 28).

The ALJ's assessment that Plaintiff "responded well" to her surgeries is flatly contradicted by the record. As explained above, Plaintiff began treatment for pain in her left thumb in March 2014. She underwent several surgeries on both her right and left upper extremities and, although she initially reported improvement in her pain following some of the surgeries, the pain returned, resulting in the need for additional surgery. Plaintiff's testimony at the administrative hearing in December 2017 is consistent with the medical record. Plaintiff testified that she underwent five surgeries with Dr. Jones. (*See* Dkt. 12 at 8). Plaintiff further explained that at the time Dr. Jones completed his medical source statement in July 2015, she was experiencing pain in her right hand; however, she later developed pain in her left hand, which resulted in surgery in February 2017. (*Id*. at 16). Plaintiff's testimony also supports that she is unable to frequently handle and finger bilaterally. For example, Plaintiff testified that she previously used a cane to walk, but became unable to use the cane due to increasing pain in her thumb and wrist. (*Id*. at 9-10). Plaintiff further testified that she uses paper plates at home because regular dishes are too

---

[2] As explained by the ALJ, PA Domnisch stated in treatment notes that Plaintiff could "bear weight as tolerated" in April 2014, October 2014, June 2015, and December 2015. (Dkt. 7 at 27). These statements were not made in connection with an assessment of Plaintiff's work-related functional limitations. Further, in February 2017, PA Domnisch indicated that Plaintiff should avoid any stress with the left thumb, remain non-weight bearing with the left hand, and perform no pinching or lifting with the left thumb. (*Id*.).

heavy; it is difficult for her to wash dishes, cook, and chop vegetables; and her daughter helps with laundry, cooking, and styling her hair. (*Id.* at 13-14).

Accordingly, the ALJ erred in his evaluation of the opinion evidence offered by Dr. Jones, who was Plaintiff's surgeon and treating specialist since 2014. The ALJ's explanation for not adopting the manipulative limitations assessed by Dr. Jones, *i.e.*, because Plaintiff showed improvement following surgery and her manipulative limitations were not continuing in nature, is not supported by the record. The ALJ's failure to offer an adequate explanation for failing to adopt the manipulative limitations assessed by Dr. Jones is particularly problematic in this case, as the medical record demonstrates that Plaintiff was at least as limited as Dr. Jones described in his July 2015 opinion. If the ALJ believed that the June 2015 manipulative limitations assessed by Dr. Jones were not supported by the record, he should have at a minimum obtained updated opinion evidence to account for the fact that Plaintiff had two additional surgeries on her left and right hand in 2017, following the issuance of the July 2015 medical statement. *See, e.g., Pagano v. Commissioner*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("[A]s the ALJ pointed out himself, Dr. Miller's opinion was rendered before [the plaintiff's] ankle surgery and therefore does not account for his deteriorating condition."); *see also Ruth M. v. Saul*, No. 5:18-CV-01006(FLS/CFH), 2020 WL 819323, at *8 (N.D.N.Y. Feb. 19, 2020) ("[C]ontrary to the Commissioner's argument, plaintiff's condition in her upper extremities demonstrably deteriorated subsequent to Dr. Ganesh's

June 2015 exam as evidenced by the three surgical procedures—for which Dr. Ganesh's opinion does not account."), *adopted*, 2020 WL 1245404 (N.D.N.Y. Mar. 16, 2020).

### B. Remedy

Pursuant to 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision, with or without remanding for a rehearing. "The standard for directing a remand for calculation of benefits is met where the record persuasively demonstrates the claimant's disability, and there is no reason to conclude that additional evidence might support the Commissioner's claim that the claimant is not disabled." *Destefano v. Berryhill*, No. 6:17-cv-06651(MAT), 2018 WL 5489574, at *5 (W.D.N.Y. Oct. 29, 2018) (internal citations omitted); *see also Harbot v. Berryhill*, 335 F. Supp. 3d 382, 388 (W.D.N.Y. 2018) ("Remand for the purpose of calculation of benefits is warranted where the record demonstrates the claimant's disability, and where there is no reason to conclude that there is additional evidence to support the Commissioner's claim that a claimant is not disabled."). Remand for calculation and payment of benefits is particularly appropriate where the well-supported opinion of a claimant's treating physician establishes disability. *See Harbot*, 335 F. Supp. 3d at 388 (remanding for calculation and payment of benefits because the plaintiff's treating physicians opined that she would need "to miss at least two days of work per month" and would "frequently . . . [be] unable to complete a workday," and "[p]er the testimony of the vocational expert at plaintiff's hearing, an individual with these limitations would not be able to meet the demands of any job").

In this case, the record persuasively demonstrates Plaintiff's disability, and remand for calculation and payment of benefits is warranted. As discussed above, the opinion of Plaintiff's treating hand surgeon Dr. Jones—including his July 2015 assessment that Plaintiff was unable to use her right extremity for lifting or manipulative limitations —is supported by the record. Further, medical records following Plaintiff's 2017 hand surgeries and her testimony at the administrative hearing supports her inability to use her left hand to perform manipulative limitations on a frequent basis. (*See, e.g.*, Dkt. 7 at 780-81 (on February 14, 2017, PA Domnisch found that Plaintiff had limited range of motion and diminished sensation in her left thumb, and instructed Plaintiff "to avoid any stress of the left thumb," and "remain non-weightbearing with the left hand, no lifting or pinching involving the left thumb."); *id.* at 775-76 (on March 14, 2017, Plaintiff reported continued pain in her left thumb and wrist, exhibited hypersensitivity, diminished sensation, and stiffness around her left thumb, as well as stiffness in her left wrist, and was recommended for participation in occupational hand therapy); Dkt. 12 at 10, 16 (Plaintiff testified that her hand and wrist pain had worsened "four or five months ago," and currently, the pain in her left hand was worse)). Moreover, at the December 2017 administrative hearing, the vocational expert testified that if the RFC was amended to permit occasional manipulative limitations, rather than a limitation for frequently handling and fingering bilaterally, there would be no competitive employment available. (*See id.* at 19). The record does not support Plaintiff's ability to engage in "frequent" manipulative limitations and, had the

ALJ properly credited the evidence offered by Dr. Jones and PA Domnisch, he would have been compelled to conclude that Plaintiff was disabled.

There is also no reason to think that further evidence would support the conclusion that Plaintiff is not disabled.  Plaintiff has already had two administrative hearings, and the record contains functional assessments and medical records dating back to 2013.  Further, the medical records demonstrate that Plaintiff has experienced ongoing arm and hand pain since 2013, which has not abated despite several surgeries.  Accordingly, the Court concludes that the proper remedy is to reverse the Commissioner's decision, and remand Plaintiff's case for the calculation and payment of benefits.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted, the Commissioner's decision is reversed, and the matter is remanded solely for the calculation and payment of benefits.  Defendant's motion for judgment on the pleadings (Dkt. 16) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: July 15, 2020
      Rochester, New York